## Case No. 8,517.

### LORWAY v. LOUSADA.

[1 Lowell, 77; 1 Am. Law Rev. 92.] [1]

District Court, D. Massachusetts. April, 1866.

CONSUL—FEES—ACTION TO RECOVER BACK—FEDERAL JURISDICTION—SHIP'S PAPERS.

1. The district court has jurisdiction of a suit brought by an alien against the consul of his nation, residing within the district, to recover the amount of official fees improperly exacted.

2. The act of congress of March 3, 1817 [3 Stat. 362], requires masters of British ships to deposit certain papers with the consul of his government within forty-eight hours of his arrival in a port of the United States. It seems, that for receiving these papers, and recording the time of their reception, the consul may charge a fee.

3. There is no such statute requiring the consul to certify to a redelivery of the papers to the master.

Assumpsit brought April 11, 1865, by [James Lorway] an inhabitant of Nova Scotia, against [Francis Lousada] the British consul, to recover back certain fees paid to him by the plaintiff under protest, in order to obtain his ship's papers from the consul; and which fees, the plaintiff alleged, the defendant had no legal right to demand. The defendant filed a plea to the jurisdiction of the court, to which the plaintiff demurred.

C. T. Russell, for plaintiff.

C. G. Thomas, for defendant.

LOWELL, District Judge. This is a suit by an inhabitant of one of the British provinces of North America against her Brittanic majesty's consul at Boston, and the pleadings raise the preliminary question, whether an action will lie here, between these parties, to recover back an alleged excess of fees exacted by the defendant for an official service. Whether the facts would show that any overcharge has in fact been made, is not now the question; but, supposing one to have been made, and that the payment was not such as the law would presume to have been voluntary, the point raised is, that no action can be maintained in our courts.

That foreigners, even transiently here, may sue and be sued by citizens and by each other in our courts of common law and equity, is now the better opinion, and is in accordance with the law of England. Story, Conﬂ. Law, § 542; 2 Kent, Comm. 64; Westl. Priv. Int. Law, § 120 et seq. Such actions are constantly brought in our state courts, and this general practice meets the approval of jurists. A late French writer has said, that the other nations have just cause of complaint against France, in that her laws deny to strangers the right to sue each other in France; a privilege which is

allowed, he says, in almost all civilized countries. Foel. Dr. Int. § 127, &c.

Courts of admiralty, it is true, exercise a considerable latitude of discretion in entertaining suits between strangers; and they are guided to some extent in the particular case by the nature of the controversy, whether it involves a question of general law, or only of the local law of the foreign country. This distinction perhaps arose out of the great diffidence with which courts of admiralty in England were formerly accustomed to approach questions of local law, whether domestic or foreign. However this may be, it is now the better opinion, in this country at least, that where circumstances make it either necessary or highly convenient that the jurisdiction should be retained, as for instance when the voyage of a foreign vessel is broken up here, a court of admiralty will take the case, whether the law which it will be bound to administer happen to be local or general. In short, the question is one of discretion in the exercise of an admitted power, and not of the power itself. See, per Taney, C. J., Taylor v. Caryll, 20 How. [61 U. S.] 611; The Havana [Case No. 6,226]; The Whilhelm Frederick, 1 Hagg. Adm. 138; Patch v. Marshall [Case No. 10,793]; The Jerusalem [Id. 7,293]; notes to 2 Pars. Mar. Law, bk. 3, c. 3. And the remark of Mr. Justice Curtis in Patch v. Marshall [supra], is to be understood, I have no doubt, in reference to a court of admiralty and its jurisdiction, which alone was involved in that case. One other assumption of fact was made by both parties at the argument, which was, that by the law of England, if an overcharge, such as is here alleged, had been made, and the payment was compulsory, an action would lie against the officer to recover the excess; and it has not been shown, that such an action must by the English law be brought in the home courts. Assuming this to be so, I am of opinion that such an action may be maintained here, there being no treaty provision to the contrary.

So far as the official character of the defendant is concerned, it has long been settled as the law of England and America, that consuls may be sued, and even arrested, for debt or damages. Wheat. Int. Law, 423; 1 Phillim. Int. Law, 240. And see Foel. Dr. Int. § 191; Mass. Droit Commer. No. 446; Pard. Droit Commer. No. 1448; Davis v. Packard, 7 Pet. [32 U. S.] 276; [Vincent v. Baker, 3 Maule & S. 384.] [2] If the defendant owes a debt, however small, to one of his countrymen, it can be sued in this court. Is there any thing in the nature of this supposed debt to put it on a different footing? I am unable to see any such difference. All the reasons of propriety and convenience are the same. The defendant for many purposes has his domicile

[1] [Reported by Hon. John Lowell, LL. D., District Judge, and here reprinted by permission. 1 Am. Law Rev. 92, contains only a partial report.]

[2] [From Am. Law Rev. 92.]

here, where the cause of action, too. arose, and where the witnesses may be supposed to be. Story, Confl. Law, § 69; Westl. Priv. Int. Law, § 139. Indeed it is not easy to see how any effective suit could be maintained in any other forum. If the laws of England allow one of their consuls to be sued at home, while residing abroad, the service upon him must be made by aid of some local rule, allowing a substituted if not a fictitious service; and a judgment so founded could hardly furnish the ground of an action out of England. In the case of some not important consulates, the office is exercised by our own citizens, who have neither real nor fictitious residence elsewhere; and in other cases the controversies may arise with our own citizens. The rule of necessity in many cases, and of convenience in all, is plainly in favor of the jurisdiction here. It must be admitted, that the mere fact of the defendant being a consul is unimportant, because consuls are liable to suit; nor is it more important that the plaintiff is a foreigner, for alien friends may freely sue in our courts; nor that the plaintiff is a British subject, for he may have suit against his consul somewhere. And the only point strenuously argued was that a court here cannot or ought not to pass upon the proper exercise of the consul's duties. No doubt our government, in all its departments, is bound to accord to the consul. after the executive authority has received him, the free exercise of all his consular authority, such as may exist by custom, treaty, or general international law. But, after he has done an act professedly official, I see no reason why an individual may not try the question here, whether the act was within the scope of his authority. I perceive no greater objection to a court undertaking to construe the English law in a case of this kind than in any other in which it may be involved between party and party, nor any reason of comity that should forbid it. International comity is rather on the other side. All nations are supposed to desire that justice should be done between their own subjects, and international law does not in the case of consuls exempt them from the jurisdiction of the courts at the place of their residence. For these reasons I must overrule the plea to the jurisdiction. Demurrer sustained.

At a later term, the case was tried to a jury, and the evidence tended to show that the action was prosecuted at the request and expense of the government of Nova Scotia to test the legality of a small fee which the consul usually charged to provincial vessels. The whole overcharge declared for was fifteen shillings, agreed to be equal to $3.63; but it was said that three thousand vessels a year were subjected to it in the port of Boston alone. It was made up of two charges of seven and sixpence, for certificates of entry and clearance and the registration of them. of which the former was said by the defendant to be required by the laws of the United States, and the latter to be authorized by usage. The statutes and orders in council of Great Britain regulating the fees of consuls were proved on behalf of the plaintiff; and the defendant introduced evidence of a long established usage at Boston, New York, and Philadelphia, in his favor. The case was argued by the same counsel as before.

In charging the jury, LOWELL, District Judge, said:

So far as this case turns on the laws of Great Britain, we must decide it merely upon the evidence before us, trusting that any mistakes we may fall into will be corrected by the official persons who may be called upon to consider the effect of our judgment upon the usages of the consul's office here and in other ports; for it is said to be rather for the examination of these usages than for the recovery of the very trifling sum at issue, that this action is prosecuted.

It is admitted that the sums of money now sued for were paid by the plaintiff, not only under protest, but under compulsion, in order to recover his ship's papers which were in the defendant's possession. This being so this action will lie, if the exaction was illegal. The laws and orders in council of Great Britain have been given in evidence, and you will decide (no question of construction being involved in the issue) whether the charge of seven shillings and sixpence is the lawful fee for each certificate of the kind given in this case, and whether such certificates are required to be given by those laws or orders. If you find no such certificates mentioned, your next inquiry will be whether the plaintiff made any such request in respect to the second certificate, as is mentioned in the order of May, 1855, to authorize services to be rendered which are not required by law. If you find either a request by the plaintiff, or a legal duty imposed on the consul, you will find for the defendant on this part of the case; otherwise for the plaintiff.

The first certificate stands upon other grounds more familiar to us. By a statute of the United States, passed March 3, 1817 (3 Stat. 362), and still in force, the master of every foreign ship and vessel must deposit his register and the clearance and other papers granted by the officers of customs at the port from which he came with the consul of the nation to which the vessel belongs within forty-eight hours of his arrival in an American port. and must deliver to the collector of the port a certificate from the consul that they have been so deposited; and this under a severe penalty. And the consul is not to deliver back the papers until the master has exhibited to him a clearance in due form from the collector of the port. and this under a penalty of not less than five hundred nor more than five thousand dollars. This right to make the consul the depositary of the ship's papers, is evidently regarded as a

privilege, because the act goes on to say that it shall not extend to the vessels of those nations in whose ports our consuls have not a like privilege. Now it is argued to you very forcibly on behalf of the defendant, that a certificate thus required by our law, and which is necessary for the master in dealing with our custom-house, cannot be refused by the consul and cannot but have been required by the plaintiff, and that its registration was essential for the protection of both parties in fixing the dates of the transaction.

It is argued for the plaintiff, that the statute 17 & 18 Vict. c. 104, § 279, commonly called the merchant shipping act, requires of masters a deposit of papers in the hands of the consul, within exactly the same time of forty-eight hours after arriving at any foreign port, and that by the other laws and orders already referred to, the services of the consul, in respect to the deposit and redelivery of those papers, are to be gratuitous. This is admitted to be true; but it appears by inspection of that part of the merchant shipping act, that the papers there referred to are wholly different from the register and other papers mentioned in our law, being those which relate to the crew, and that the law is looking to the due supervision by the consul of the relation between the master and the men; while our statute touches only those which show the nationality of the vessel and the legality of the voyage, and deals with what may be called the international aspects of the voyage. If this be so, the provision that the deposit of wholly different papers shall not be the subject of a charge, is, of course, immaterial. So far as our law is concerned, then, I rule to you that the first certificate is required to be given; and that the second certificate, namely, that the vessel has been duly cleared, is not required, and is useless for any purposes connected with our port or custom-house. You will apply this law to that of the foreign country, proved as a fact before you, and decide accordingly, under the instructions above given, whether these charges, or either of them, were lawful.

A good deal was said by learned counsel on both sides, about the reasonableness of the charges. It will not be necessary for you to concern yourselves with that question, if you find the case is provided for by the laws and orders given in evidence. If you find it wholly untouched by those laws and orders, and yet, that the services were rendered at the request of the plaintiff, he must pay what they were reasonably worth. But I think it my duty to say to you, that I see nothing in the evidence which would warrant you in coming to that conclusion in respect to the second certificate.

The jury found for the plaintiff for one-half the amount demanded; and in answer to a question by the court, said that the second certificate was not required by the law of Great Britain, nor given at the request of the plaintiff. Judgment accordingly.